IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

AUGUST SESSION, 1998

FILED

October 13, 1998

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 01C01-9802-CC-00085 |
| | ) | |
| Appellee, | ) | |
| | ) | ROBERTSON COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. JOHN H. GASAWAY, III, JUDGE |
| LARRY DIXON, | ) | |
| | ) | (ESPECIALLY AGGRAVATED SEXUAL |
| Appellant. | ) | EXPLOITATION OF A MINOR) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

MICHAEL R. JONES                      JOHN KNOX WALKUP
District Public Defender              Attorney General & Reporter
110 Sixth Avenue, West
Springfield, TN  37172                KAREN YACUZZO
                                      Assistant Attorney General
                                      2nd Floor, Cordell Hull Building
                                      425 Fifth Avenue North
                                      Nashville, TN  37243

                                      JOHN WESLEY CARNEY, JR.
                                      District Attorney General

                                      DENT MORRISS
                                      Assistant District Attorney General
                                      500 South Main Street
                                      Springfield, TN  37172

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Larry Dixon, appeals as of right his conviction of especially aggravated sexual exploitation of a minor. He was convicted following a bench trial in the Robertson County Circuit Court. The trial court subsequently sentenced Defendant to ten (10) years as a Range I Standard Offender. In this appeal, Defendant raises the following issues:

> (1) Whether the trial court erred in finding that the video in question depicted sexual activity under Tennessee Code Annotated section 39-17-1002 and -1005;
>
> (2) Whether the trial court erred in finding Defendant's conduct involved promotion or use of children under the aforementioned statute;
>
> (3) Whether the statutory prohibition against "lascivious exhibition of the female breast or genitals or pubic area of any person" is unconstitutionally vague; and
>
> (4) Whether the trial court erred in sentencing Defendant to serve ten years in confinement.

We affirm the judgment of the trial court.

The facts presented at trial revealed that during the summer of 1996, Defendant and Deborah Presson were living together in an apartment in Springfield, Tennessee. A two-way mirror had been installed in the apartment which allowed someone in Defendant's bedroom closet to view a person in the bathroom without the knowledge of that person.

Deborah Presson's sister, Paula Harris, testified that during a visit to her sister, she discovered the two-way mirror with a video camera set up behind it. Ms. Harris subsequently returned to the apartment, searched it, and found a video of two

young girls taking a bath together. The video includes closeups of one of the young girl's breasts and pubic area. Ms. Harris took the tape and called the police.

The police eventually discovered that the girls were the daughters of Dixon's former neighbors and that the girls would occasionally visit Defendant and Ms. Presson. Since the victims are minors, they will be referred to by their initials only. A.H. was twelve years old at the time of the offense and her sister, C.H., was ten years old. Ms. Presson, who was indicted as well, testified against Defendant at trial and said that it was Defendant who set up the camera to video A.H. and C.H. while they were bathing. Ms. Presson further testified that Defendant urged her to have A.H. pose as if she were taking her picture so that he could "see what he needed to see." Ms. Presson said that Defendant watched the video of the minors before having sex with her (Presson). A.H. testified that she was unaware that she was being videotaped while she was in the bathtub.

I.

Tennessee Code Annotated section 39-17-1005 provides in part as follows:

> (a) It is unlawful for a person to knowingly promote, employ, use, assist, transport or permit a minor to participate in the performance or in the production of material which includes the minor engaging in: (1) Sexual activity.

Tenn. Code Ann. § 39-17-1005(a)(1). The pertinent definition of "sexual activity" as applied to the facts of this case is the "[l]ascivious exhibition of the female breast or the genitals or pubic area of any person." Tenn. Code Ann. § 39-17-1002(7)(G).

Defendant argues that the video in question does not involve sexual activity since it only involves two minor girls taking a bath together. However, we agree with the State's position that this goes well beyond the innocent videotaping of two young girls frolicking in the bathtub. This video goes beyond the bounds of decency as it involves the coaxing of young girls to pose for an imaginary camera as well as footage in which Defendant focuses specifically on the breasts and pubic area of A.H.

Tennessee case law has not specifically addressed the meaning of lascivious exhibition as it relates to Tennessee Code Annotated section 39-17-1005. However, the United States District Court for the Middle District of Tennessee acknowledged that the determinative test for assessing whether a visual depiction of a minor involves the lascivious exhibition of genitals was developed in United States v. Dost, 636 F. Supp. 828 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987), cert. denied, 484 U.S. 856, 108 S. Ct. 164, 98 L. Ed. 2d 118 (1987). See Rhoden v. Morgan, 863 F. Supp. 612, 619 (M.D. Tenn. 1994), aff'd, 97 F.3d 1452 (6th Cir. 1996), cert. denied, 117 S. Ct. 1448, 137 L. Ed. 2d 553 (1997). In Dost, the court listed at least six factors for a trial court to consider in determining whether or not a visual depiction of a minor constitutes a "lascivious exhibition of the genitals or pubic area." 636 F. Supp. at 832. Such factors included in Dost are:

> (1) whether the focal point of the visual depiction is on the
> child's genitalia or pubic area;
>
> (2) whether the setting of the visual depiction is sexually
> suggestive, i.e., in a place or pose generally associated
> with sexual activity;
>
> (3) whether the child is depicted in an unnatural pose, or
> in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

Id.

The Dost court further noted that a visual depiction "need not involve all of these factors to be a 'lascivious exhibition of the genitals or pubic area.' The determination will have to be made based on the overall content of the visual depiction, taking into account the age of the minor." Id.

Defendant argues that the filming of the two girls bathing does not fall under the Tennessee statutory definition of sexual activity. However, we find at least four of the six Dost factors to be present in this case. First, Defendant focuses the camera on the breasts and pubic area of A.H. during certain portions of the tape. Second, Ms. Presson encouraged A.H. to pose for a pretend camera. These poses were not natural for a young child to be doing while taking a bath. Third, both girls were nude. Finally, according to Ms. Presson's testimony, Defendant viewed the videotape before engaging in sexual relations with her. This supports the argument that the video was intended to elicit a sexual response in the viewer. Based on all the foregoing, the video in question clearly falls within the "sexual activity" definition found in Tennessee Code Annotated section 39-17-1002(7)(G).

II.

In its Verdict and Order, the trial court found the elements of the convicting offense, especially aggravated sexual exploitation of a minor, under the facts of this case to be as follows:

> (1) that the defendant did **promote**, **use** or permit a minor to participate in the performance or in the production of **material** which includes the minor engaging in sexual activity, and
>
> (2) that the defendant acted knowingly.

See Tenn. Code Ann. § 39-17-1005(a)(1) (emphasis added). The court went on to list the relevant definitions in part as follows:

> (1) "**Promote**" means to finance, **produce**, direct, manufacture, issue, publish, exhibit **or** advertise.
>
> (2) "**Material**" means any picture, drawing, photograph, motion picture film, **videocassette tape** or other pictorial representation.

See Tenn. Code Ann. § 39-17-1002(5) and (2)(A) (emphasis added).

Defendant argues that his conduct, as to the video at issue, does not fall under the statutory definition of promote. First, under the facts of this case, Defendant's operation of the video camera to film the girls in the bathtub involved production of a tape. Defendant, in disputing the application of "promote," groups "produce and direct" together to suggest that the child must be a knowing participant in the activity. See Tenn. Code Ann. § 39-17-1002(5). However, as emphasized above, the definition of "promote" uses the term "or" to separate the kinds of actions which fall within its statutory definition. In the instant case, Defendant clearly produced a tape which complies with the statutory definition of "promote."

Further, Defendant implies that "exhibit" applies to material being shown to others. However, this assumption is misplaced as this Court in State v. Falin recognized that the statute is intended to apply to both commercial and non-commercial uses. C.C.A. No. 03C01-9210-CR-00340, Sevier County (Tenn. Crim. App., Knoxville, June 22, 1993), perm. to appeal denied (Tenn. 1993). Ms. Presson testified that Defendant produced and viewed the video in order to satisfy his own sexual desires. This issue is without merit.

## III.

Defendant argues that the word "lascivious" is unconstitutionally vague under the statute and as applied by the trial court. Again, the statute does not specifically define the word "lascivious" but the trial court defined "lascivious" as "tending to excite lust; lewd; indecent." We are required to construe criminal statutes according to the "fair import of their terms." Tenn. Code Ann. § 39-11-104. That construction requires reference to "judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104. Among the most prominent of the tenets of statutory construction is the requirement that courts must construe statutes so as to give effect to legislative intent. See, e.g., Wilson v. Johnson County, 879 S.W.2d 807, 709 (Tenn. 1994). That intent is to be determined by the natural and ordinary meaning of the language.

Congress substituted the term "lascivious" in place of "lewd" in the federal statute dealing with the protection of children. 18 U.S.C.A. § 2256(2)(E). In doing so, Congress acknowledged that "'[l]ewd' has in the past been equated with 'obscene'; this change is thus intended to make it clear that an exhibition of a child's

genitals does not have to meet the obscenity standard to be unlawful." 130 Cong. Rec. S3510, S3511 (daily ed. Mar. 30, 1984) (statement of Sen. Specter). "'Lascivious' is no different in its meaning than 'lewd,' a commonsensical term whose constitutionality was specifically upheld in Miller v. California [citations omitted] and New York v. Ferber [citations omitted]." Weigand, 812 F.2d 1239 (9th Cir. 1987), cert. denied, 484 U.S. 856, 108 S. Ct. 164, 98 L. Ed. 2d 118 (1987). Further, our supreme court has also noted that definitions in this State's obscenity statutes, including the "lewd exhibition of the genitals," were written to comply with the language approved in Miller v. California (citation omitted). See Taylor v. State, 529 S.W.2d 692, 696-97 (Tenn. 1975).

Defendant also argues that Tennessee Code Annotated section 39-17-1002 does not give fair warning to people of common intelligence as to the meaning of "lascivious." However, this Court has previously stated that the use of the words "lewd, lascivious, and obscene" are sufficient descriptions to put ordinary persons of common intelligence on notice as to what conduct is prohibited. State v. Carter 687 S.W.2d 292 (Tenn. Crim. App. 1984), perm. to appeal denied (Tenn. 1985). Further, in State v. Falin, this Court upheld the constitutionality of Tennessee Code Annotated section 39-17-1005, specifically stating that "[a]ll the terms in the statute can be understood by their common usage, except perhaps for 'promote' which is defined in § 37-17-102(5) [sic]." C.C.A. No. 03C01-9210-CR-00340, slip op. at 4. We find that the word "lascivious" in the statute is not unconstitutionally vague, and thus, Defendant's issue is without merit.

IV.

Defendant argues that the trial court did not give appropriate weight to the mitigating factor of no prior criminal history, and that he is entitled to an alternative sentence.

When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this Court must consider the evidence adduced at trial and the sentencing hearing, the presentence report, the principles of sentencing, the arguments of counsel relative to sentencing alternatives, the nature of the offense, and the defendant's potential for rehabilitation. Tenn. Code Ann. § 40-35-210; State v. Parker, 932 S.W.2d 945, 955-56 (Tenn. Crim App. 1996).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Upon review of the record, we find that the trial court considered the proper sentencing principles and stated its

reasons and findings on the record. Therefore, review by this court is <u>de novo</u> with a presumption of correctness.

The trial court found the following enhancement factors to be applicable to Defendant's sentence:

> (1) Defendant was a leader in the commission of an offense involving two (2) or more criminal actors;
>
> (2) The offense involved more than one victim; and
>
> (3) Defendant abused a position of private trust.

Tenn. Code Ann. § 40-35-114(2), (3) and (15). As a mitigating factor, the court found Defendant's lack of a criminal record to apply. Tenn. Code Ann. § 40-35-113(13).

Defendant was convicted of a Class B felony as a Range I Standard Offender. The sentencing range for a Range I Standard Offender convicted of a Class B felony is not less than eight (8) years nor more than twelve (12) years. Tenn. Code Ann. § 40-35-112(a)(2). The presumptive sentence for a Class B felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). Should there be enhancement and mitigating factors, the court must start at the minimum sentence in the range, enhance the sentence within the range as appropriate for the enhancement factors, and then reduce the sentence within the range as appropriate for the mitigating factors. Tenn. Code Ann. § 40-35-210(c). If the trial judge complies with the purposes and principles of sentencing and his findings are adequately supported by the record, then the weight assigned to the existing enhancing and mitigating factors is generally

left to his or her discretion.  See State v. Marshall, 870 S.W.2d 532, 541 (Tenn. Crim. App.), perm. to appeal denied (Tenn. 1993).  The trial court in the case sub judice, imposed a ten (10) year sentence for the Class B felony conviction.  The trial court did consider the mitigating factor in this case, but in light of all the evidence presented at trial, that mitigating factor did not weigh heavily against the enhancement factors.  Even if some evidence of mitigation exists, where the mitigation factors are strongly outweighed by the enhancement factors, the maximum sentence may be warranted.  See State v. Ruane, 912 S.W.2d 766, 785 (Tenn. Crim. App. 1995).  The great weight attribuable to the applicable enhancement factors more than justifies the less than maximum ten (10) year sentence imposed in this case.

Defendant also suggests that he is entitled to be placed on probation. However, because the trial court justifiably imposed a sentence in excess of eight years, as previously discussed, Defendant is not eligible for probation. Tenn. Code Ann. § 40-35-303(a).  Furthermore, Defendant offered no persuasive argument at the sentencing hearing as to why probation, or any other type of alternative sentence, would be appropriate in this case.  We find that the trial court was correct in ordering a sentence of total confinement.  This issue is without merit.

Based on all the foregoing, the judgment of the trial court is affirmed.

_____
THOMAS T.  WOODALL, Judge

CONCUR:

-11-

_____
JOHN H. PEAY, Judge


_____
L. T. LAFFERTY, Special Judge